UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

| | |
|---|---|
| Eva L. Powers, Executrix of the Estate of Arthur F. Neilson,<br><br>                Plaintiff,<br>v.<br><br>One Beacon America Insurance Company, et al.<br><br>                Defendant(s), | : <br>: <br>: Civil Action No.: 1:14-cv-01093-RJA<br>: <br>: <br>: <br>: <br>: |
| Harper Insurance Limited, F/K/A Turegum Insurance Company, Assicurazioni Generali, SPA,<br><br>                Third-Party Plaintiff(s),<br>v.<br><br>Hedman Resources Ltd.,<br><br>                Third-Party Defendant(s) | : <br>: <br>: <br>: <br>: <br>: <br>: <br>: |

**MEMORANDUM OF LAW
IN SUPPORT OF
DEFENDANTS HARPER INSURANCE LIMITED, F/K/A TUREGUM
INSURANCE COMPANY, AND ASSICURAZIONI GENERALI, SPA'S
OPPOSITION TO PLAINTIFF NEILSON'S
CROSS-MOTION FOR SUMMARY JUDGMENT**

GOLDBERG SEGALLA LLP
Helen Franzese, Esquire
Ronald D. Puhala, Esquire
902 Carnegie Center, Suite 100
Princeton, New Jersey 08540-6530
(609) 986.1334
*Attorneys for Defendants/Third
Party Plaintiffs Harper Insurance
Limited, f/k/a Turegum Insurance
Company, and Assicurazioni
Generali, SPA*

# TABLE OF CONTENTS

**PRELIMINARY STATEMENT** ................................................................................................ 1

**LEGAL ARGUMENT** ................................................................................................................ 1

I. THERE WAS NO "FRAUDULENT CONVEYANCE" UNDER N.Y. DEBT. & CRED. LAW § 273(a) (PRESUMED FRAUD). ................................................................................ 1

II. N.Y. DEBT. & CRED. LAW § 273 IS INAPPLICABLE WHERE HEDMAN WAS NOT INSOLVENT OR MADE INSOLVENT BY THE COMPANIES' SETTLEMENT AGREEMENT ................................................................................................................ 2

    A. The Neilson Judgment was not an "Existing Debt" at the Time of the Companies' Settlement with Hedman, and Neilson, as a future creditor, has no standing under N.Y. Debt. & Cred. Law § 273. ................................................................................ 2

III. Even Assuming Coverage Applies, the Companies' Allocated Share of the Neilson Judgment is Less than $19,000 ................................................................................ 3

    A. Plaintiff cannot establish financial prejudice. ............................................................ 3

IV. INSURANCE LAW § 3420 DOES NOT ADDRESS HOW TO ALLOCATE DAMAGES ................................................................................................................ 4

V. PLAINTIFF HAS FAILED TO ESTABLISH BODILY INJURY DURING THE COMPANIES' POLICY YEAR. ................................................................................ 5

VI. THE COMPANIES' SETTLEMENT PAYMENT TO HEDMAN WAS FOR "FAIR CONSIDERATION" ................................................................................................ 5

    A. The Companies' Settlement Payment was for "Fair Value." ...................................... 5

VII. PLAINTIFF DOES NOT HAVE A CAUSE OF ACTION UNDER NEW YORK DEBTOR AND CREDITOR LAW § 276 (ACTUAL FRAUD) ...................................... 6

    A. Plaintiff did not properly plead fraud. ........................................................................ 6

THE LONDON COMPANIES' OPPOSITION TO PLAINTIFF'S CROSS MOTION FOR SUMMARY JUDGMENT ................................................................................................ 7

I. NEW YORK'S DIRECT ACTION STATUTE DOES NOT VOID THE COMPANIES' SETTLEMENT AGREEMENT ................................................................................ 7

A. Insurance Law § 3420 does not void the Companies' settlement regarding future unknown claims. ................................................................................................................ 7

**CONCLUSION** ............................................................................................................................. 8

4523509.3

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Dedvukaj v. Allstate Ins. Co.*,
   175 A.D.2d 1 (1st Dept. 1991), rev'd on other grounds, 80 N.Y.2d 843 (1992) ........................ 8

*Lippe v. Bairnco Corp.*,
   99 Fed. Appx. 274 (2d. Cir 2004) .................................................................................. 2, 4, 6, 8

*Promenade Nursing Home v. Cohen-Fleisher*,
   983 N.Y.S.2d 205(N.Y. Sup. Ct. Kings County 2013) .................................................................. 6

*Shelly v. Doe*,
   671 N.Y.S.2d 803 (3rd Dept. 1998) ............................................................................................ 2

*Standard Chartered Bank v. Kittay*,
   628 N.Y.S.2d 307 (2d. Dept. 1995) ............................................................................................ 2

*In Re Swan-Finch Oil Corp.*,
   279 F.Supp. 386 (S.D.N.Y. 1967) ............................................................................................... 5

**Statutes**

N.Y. DEBT. & CRED. LAW .................................................................................................... 5, 6

INSURANCE LAW § 3420 .................................................................................................. 4, 7, 8

N.Y. DEBT. & CRED. LAW ........................................................................................................ 2

N.Y. DEBT. & CRED. LAW § 273 ........................................................................................... 2, 3

N.Y. DEBT. & CRED. LAW § 273(A) ........................................................................................... 1

NEW YORK DEBTOR AND CREDITOR LAW § 276 ............................................................ 6, 7

N.Y. DEBT. & CRED. LAW §§ 273(a) – 275 ............................................................................... 6

4523509.3

## PRELIMINARY STATEMENT

Defendants Harper Insurance Limited, f/k/a/ Turegum Insurance Company ("Harper"), and Assicurazioni Generali, SPA ("Generali") (collectively "the London Companies" or "Companies"), respectfully submit the following reply Memorandum of Law in Opposition to Plaintiff Neilson's Cross-Motion for Summary Judgment. In the interest of judicial economy the London Companies incorporate by reference their Memorandum of Law in support of their Motion for Summary Judgment and Opposition to Plaintiff Mineweaser's Cross-Motion for Summary Judgment. [1:14-cv-585, Docket Nos. 124 and 136].[1] The London Companies make the following additional arguments based on the unique facts in the Neilson matter.

## LEGAL ARGUMENT

### I. THERE WAS NO "FRAUDULENT CONVEYANCE" UNDER N.Y. DEBT. & CRED. LAW § 273(A) (PRESUMED FRAUD).

It is not clear if Plaintiff Neilson continues to argue that N.Y. Debt. & Cred. Law § 273(a) (presumed fraud) applies to the London Companies. In an abundance of caution, the London Companies observe that Neilson served Hedman his asbestos tort complaint on 26 November 2013; over one year after the effective date of London Companies' settlement with Hedman, and nearly one year after the Companies paid the Hedman settlement. Duggan 9 Sept. 2015 Declaration, Ex. 5, p. 2 [1:14-cv-01093-RJA, Docket No. 48-7]. The Settlement Agreement was effective 11 October 2012 and payment was made on 6 December 2012. (Feb. 2016 SOMF ¶ 1). Clearly, Hedman was not a defendant in the Neilson litigation at the time of the settlement.

---

[1] The London Companies incorporate the entire memorandum of law filed in the Mineweaser action, except, as indicated, regarding pleading deficiency and fraud.

## II. N.Y. DEBT. & CRED. LAW § 273 IS INAPPLICABLE WHERE HEDMAN WAS NOT INSOLVENT OR MADE INSOLVENT BY THE COMPANIES' SETTLEMENT AGREEMENT

### A. The Neilson Judgment was not an "Existing Debt" at the Time of the Companies' Settlement with Hedman, and Neilson, as a future creditor, has no standing under N.Y. Debt. & Cred. Law § 273.

As discussed more fully in the Mineweaser brief, a debtor is "insolvent" for purposes of § 273 where his assets are "less than the amount that will be required to pay his probable liability on his **existing debts** as they become absolute and matured." N.Y. Debt. & Cred. Law § 271. *(Emphasis added.)* A "probable tort debt," however, is irrelevant to a solvency determination as it is not an "existing debt." See *Shelly v. Doe*, 671 N.Y.S.2d 803, 805-806 (3rd Dept. 1998). See also, *Lippe v. Bairnco Corp.*, 99 Fed. Appx. 274, 282 (2d. Cir 2004)(holding the estimated liability of future asbestos claimants is not an "existing debt" for purposes of § 273).

The Neilson judgment was entered on 23 October 2014, over two (2) years after the Companies' 11 October 2012 settlement with Hedman. See Pl Sept 2015 SOMF ¶14 [1:14-cv-01093-RJA, Docket No. 48-1]. Accordingly, that judgment (or Hedman's purported inability to pay that judgment) cannot be used to establish Hedman's alleged insolvency at the time of the Settlement Agreement.

Moreover, since Plaintiff became a judgment creditor in December 2014, well after the October 2012 settlement, he has no standing under N.Y. Debt. & Cred. Law § 273. See e.g., *Standard Chartered Bank v. Kittay*, 628 N.Y.S.2d 307, 307 (2d. Dept. 1995)(holding NY Debt. & Cred. Law § 273 "makes no provision for those who become creditors after a fraudulent transfer"); *Hillside Manor Rehabilitation & Extended Care Ctr., LLC v. Dallu*, 932N.Y.2d 302, 304 (2d. Dept. 2011)(finding "[a]s Debtor and Creditor Law § 273 makes no provision for those who become creditors after the alleged fraudulent transfer the Civil Court should have granted … partial summary judgment").

2

## III. EVEN ASSUMING COVERAGE APPLIES, THE COMPANIES' ALLOCATED SHARE OF THE NEILSON JUDGMENT IS LESS THAN $19,000.

### A. Plaintiff cannot establish financial prejudice.

As discussed more fully in the Mineweaser brief, New York adopts an injury in fact trigger and pro rata by time allocation with regards to asbestos claims. In his opposition brief, Plaintiff Neilson merely asserts that he was exposed to Hedman asbestos from 1970 to 1976. Pl. Sept 2015 Br. Pg. 26 [1:14-cv-00585-RJA-HKS. Docket No. 118-3].[2] Under New York law, however, Plaintiff must establish "injury in fact" during the Companies' policy years, not merely exposure.

Moreover, even if Plaintiff could establish bodily injury related to Hedman asbestos during the Companies' policy period and defeat all of the Companies coverage defenses, the London Companies' share of the Neilson judgment (assuming *arguendo* such an obligation exists) is less than $19,000, and may be as little as $3,333.[3] As the London Companies' paid multiples of that amount, their settlement fully funded their share of any potential liability of Hedman for the Neilson judgment.

If, under the most favorable allocation to Plaintiff, Plaintiff is entitled to less than $19,000 from the London Companies for the Neilson judgment, the $100,000 settlement cannot be a fraudulent conveyance, as a matter of law. For example, in *Lippe, supra.*, 99 Fed. Appx. at 280-282 the Second Circuit held;

---

[2] Duggan Sept. 2015 Declaration, Ex. 5, ¶¶ 10,14-27 [1:14-cv-01093-RJA, Docket No. 48-7] appears to indicate exposure period from 1970 to 1977.

[3] The Neilson judgment is $3,000,000. Mr. Neilson apparently succumbed to asbestos related disease in 2015. Assuming arguendo Plaintiff can establish bodily injury from Hedman asbestos products beginning in 1970, as discussed more fully in the Mineweaser brief, the end date for the spread period would be early 2015 implicating 45 policy years. $3,000,000/45 = $66,667 allocation to each policy year. The London Companies' share of the 1976 policy is 5%, and; therefore, their share of the Neilson judgment is **$3,333** (i.e., $66,667 x 5% = $1714.) Even assuming arguendo an end to the spread period in 1985, the London Companies share would be **$9,375** (i.e., $3,000,000/16 x .05 = $9,375. Lastly, even under Plaintiff's alleged "exposure only" spread period, the Companies' share would be **$18,750** (i.e., $3,000,000/8 x .05 = $18,750.)

3

4523509.3

> In New York, fraudulent-conveyance liability may not attach absent some prejudice to a creditor of the transferor ... **In sum, for plaintiffs to survive summary judgment on their claims for actual and constructive fraud, they must at the very least be able to prove that [the debtor's] creditors were prejudiced by the asset sale.** (Emphasis added.)

Here, Plaintiff cannot establish the necessary financial "prejudice." The London Companies paid multiples of their potential allocation of the Neilson judgment – even assuming coverage can be established.

## IV. INSURANCE LAW § 3420 DOES NOT ADDRESS HOW TO ALLOCATE DAMAGES.

As discussed more fully in the Mineweaser brief, Insurance Law § 3420 does not allocated damages for long term toxic tort claims. Moreover, even if § 3420 is a trigger and allocation statute, and it is not, Plaintiff Neilson failed to establish what, if any, "injury [was] sustained during the life" of the 1976 Policy, as set forth in the statute. Clearly, not all of Mr. Neilson's injuries occurred in 1976. Mr. Neilson was diagnosed with mesothelioma in June 2013, over 36 years after the Companies' policy terminated. Duggan Sept. 2015 Dec., Ex. 5, ¶ 2 1:14-cv-01093-RJA, Docket No. 48-7]. Apparently, Mr. Neilson first experienced symptoms from asbestos related disease beginning in May 2013. Duggan Sept 2015 Dec., Ex 5., ¶ 45. [1:14-cv-01093-RJA, Docket No. 48-7] Plaintiff only alleges exposure to asbestos in 1976 and fails to establish any bodily injury during that year.

Moreover, 3420(a)(2) provides that a judgment creditor may maintain an action against "the insurer under the terms of the policy ...". As discussed extensively in the Mineweaser brief, the New York courts have consistently applied an injury in fact trigger and pro rata allocation "under the terms of the [Companies'] policy" and relatedly, have rejected "all sums" allocation, as argued for by Plaintiff Neilson.

4

4523509.3

## V. PLAINTIFF HAS FAILED TO ESTABLISH BODILY INJURY DURING THE COMPANIES' POLICY YEAR.

As discussed above, Plaintiff Neilson fails to establish that he suffered bodily injury during the London Companies' 1976 policy year, or during any year at issue. Accordingly, Plaintiff's cause of action for insurance coverage fails as a matter of law.

## VI. THE COMPANIES' SETTLEMENT PAYMENT TO HEDMAN WAS FOR "FAIR CONSIDERATION"

### A. The Companies' Settlement Payment was for "Fair Value."

At most, Plaintiff may only have the London Companies' settlement agreement "set aside … to the extent necessary to satisfy [her] claim." Debtor and Creditor Law § 278(1)(a). The Court in *In Re Swan-Finch Oil Corp.*, 279 F.Supp. 386, 390-91 discussed the limiting nature of § 278(1)(a) stating:

> The language of the statute, prima facia, allows a creditor to act only in his own right. **He is not entitled to judgment setting the conveyance aside completely**, so at to subject any excess to claims of other creditors …. **When the debt of the moving creditor is satisfied, the transfer is valid as to the debtor as well as other persons.** (Emphasis added.)

Thus, § 278(1)(a) raises the question, what amount is necessary to satisfy Neilson's claim against the London Companies? As established, Plaintiff's claim as to the London Companies is potentially between $3,333 and $18,750. Whether the Companies' settlement payment was $100,000 or $100,000,000 is, therefore, irrelevant. The Companies paid Hedman far more than the Companies' share of Plaintiff's debt, assuming coverage is established; and, consequently, the settlement payment is "fair value" as to Plaintiff Neilson under §§ 273(a) – 275. See e.g., *Lippe, supra.*, 99 Fed. Appx. 281-282 (finding the calculation of "fair value" cannot rely upon the potential liability of future asbestos claimants, because "the hypothetical existence of an unaccrued tort claim does not give rise to a debtor-creditor relationship").

5

Even more fundamentally, Plaintiff has no cause of action against the London Companies under the fraudulent conveyance statute, because the cash provided to Hedman in settlement far *exceeds Plaintiff's debt payable by the Companies. See Lippe, supra., 9 Fed. Appx. at 280-282(holding* "[i]n New York, fraudulent-conveyance liability may not attach absent some prejudice to a creditor of the transferor"). See also, *Promenade Nursing Home v. Cohen-Fleisher*, 983 N.Y.S.2d 205 ((N.Y. Sup. Ct. Kings County 2013)(holding there was no fraudulent conveyance where the resulting reverse mortgage provided funds that were "more than adequate" to pay debt owned to the creditor).

## VII. PLAINTIFF DOES NOT HAVE A CAUSE OF ACTION UNDER NEW YORK DEBTOR AND CREDITOR LAW § 276 (ACTUAL FRAUD)

### A. Plaintiff did not properly plead fraud.

The Companies do not move based on a failure to properly plead fraud with regards to the Neilson complaint. The London Companies observe, however, that Debt. Cred. Law § 276 requires proof that the transferor – Hedman – acted with the intent to commit fraud, as opposed to the intent of the transferee - the London Companies. See *Chen v. New Trend Apparel, Inc.,* 8 Supp.3d 406, 438 (S.D.N.Y. 2014). Plaintiff did not sue Hedman and it is not a defendant with regards to § 276. It is difficult to understand how Plaintiff can establish Hedman's intent when it is not a defendant to Plaintiff's Complaint.

Moreover, as discussed in the Mineweaser brief, Hedman has stated that the Companies' settlement payment has been set apart in light of the Companies' indemnity provision. Thus, the fair value that Hedman received in settlement is otherwise available to Plaintiff, assuming he can enforce his judgment under Ontario law.

* * * *

## THE LONDON COMPANIES' OPPOSITION TO PLAINTIFF'S CROSS MOTION FOR SUMMARY JUDGMENT

### I. NEW YORK'S DIRECT ACTION STATUTE DOES NOT VOID THE COMPANIES' SETTLEMENT AGREEMENT

**A.  Insurance Law § 3420 does not void the Companies' settlement regarding future unknown claims.**

As stated throughout, the London Companies incorporate by reference their brief filed in the Mineweaser matter. Regarding the Neilson law suit, the London Companies observe Plaintiff was not a judgment creditor or even a tort plaintiff at the time of the Companies' settlement agreement. Neilson served Hedman the asbestos tort Complaint on November 26, 2013 -- over one year after the London Companies and Hedman entered into their settlement agreement. Duggan Sept. 2015 Dec., Ex 5, p 2. [1:14-cv-01093-RJA, Docket No. 48-7].

Thus, the qualifying event – notice of the Neilson complaint -- occurred after the Companies' settlement agreement was binding and effective. (In fact, Neilson was not even diagnosed with mesothelioma until June 2013, nearly eight (8) months after the parties' settlement agreement.) (Duggan Sept. 2015 Dec., Ex. 5, ¶ 2 [1:14-cv-01093-RJA, Docket No. 48-7]. Mineweaser does not cite to a single case holding that the settlement of a coverage dispute is void under Insurance Law § 3420 where the claim is noticed **a year after** the effective date of the settlement. New York case law is to the contrary. See, e.g., *Dedvukaj v. Allstate Ins. Co.*, 175 A.D.2d 1 (1st Dept. 1991), rev'd on other grounds, 80 N.Y.2d 843 (1992)(holding where the unreported accident occurred during the policy period but the tort complaint was filed after the policy was canceled, the cancellation of a general liability policy "was valid even after the occurrence of an insurable accident since the rights of a third party had not been adversely affected"). See also, *Lippe, supra.*, 99 Fed. Appx. at 282 (finding "[u]nder current New York law a cause of action accrues in a toxic-tort case not on the date of exposure, but rather on 'the

7

4523509.3

date of discovery of the injury by the plaintiff or . . . the date when through the exercise of reasonable diligence such injury should have been discovered by the plaintiff whichever is earlier'"). (Quoting, N.Y. C.P.L.R. § 214-c.)

## CONCLUSION

Plaintiff still has not established how a $100,000 settlement of an insurance coverage dispute is fraudulent where Plaintiff's best case judgment against the London Companies would be less than $19,000. The London Companies entered into a good faith settlement agreement and provided Hedman with more than enough money to pay the Mineweaser judgment several times over. Under the undisputed facts, there is simply no valid legal basis to void that agreement.

For these and all the foregoing reasons, the London Companies' respectfully request that Plaintiff's cross-motion for summary judgment should be denied.

GOLDBERG SEGALLA, LLP

BY: /s/ Ronald D. Puhala
Ronald Puhala, Esq.
*Attorneys for Defendants Harper Insurance Limited (f/k/a Turegum Insurance Company) and Assicurazioni Generali, SPA*
902 Carnegie Center, Suite 100
Princeton, New Jersey 08540
Telephone: 609-986-1300
rpuhala@goldbergsegalla.com

February 9, 2015

8

4523509.3